REGAN, Judge.
Plaintiff, Miss Mary C. Hall; a passenger, instituted this suit against the defendant, New Orleans Public Service, Inc., endeavoring to recover the sum of $22,245 as damages for personal injuries and medical expenses incurred by her on January 18, 1954, at about 7 rOO P.M., when she was attempting to board defendant’s street car in S. Carrollton Avenue at Hickory Street, in the City of New Orleans.
Defendant answered and admitted the occurrence of the accident, but denied that it was caused through the fault of its conductor and pleaded that the sole and proximate cause thereof was the gross negligence of the plaintiff in attempting to board a moving street car and, in the-alternative, pleaded her contributory negligence.
From a judgment in favor of the plaintiff in the sum of $2,500, defendant has prosecuted this appeal.
As usual the record reflects- two conflicting versions of the manner in which the accident occurred.
Plaintiff, a woman fifty-eight years of age, in relating her version thereof, testified that she resided in 1635 S., Carrollton Avenue and, on the night of the accident, it *598 was her intention to board a street car going in the general direction of St. Charles Avenue; she walked to the car stop located in the neutral ground of Hickory Street and S. Carrollton Avenue and, when she arrived, she noticed two men[1] standing there. It was dark, she was fearful and she did not know the men so she stood “a distance[2] away”; as the car approached they were engaged in an animated discussion as to who would pay the fare and when it arrived they boarded the car; she attempted to follow by placing one hand on the stanchion and one foot on the step, but before she could enter, the car prematurely started and the doors simultaneously closed on her arm. She was dragged seven to ten feet before an emergency stop was effected. She was removed from the neutral ground and then seated in the car. Her right shoe was missing and it was subsequently found on the step of the car. On both direct and cross-examination she asserted without equivocation that the car was stopped when she attempted to board it.
The plaintiff’s aspect of the case is, to a large extent, substantiated by one witness, M. J. St. Romain, who related that he was sixty-three years of age and that his former occupation was that of a conductor from 1915 to 1926, when he voluntarily resigned to enter the insurance business. On the night of the accident he was standing on the rear platform “between the controller box and the airbrake” when three or four passengers boarded the car at Car-rollton Avenue and Hickory Street. “The conductor started the car and locked the door and I saw a hand in the door and a noise on the outside, so I gave * * * the motorman an emergency signal to stop- — -and the conductor opened the door and there was a lady outside * * * on her back on the ground. * * * her right shoe was on the step of the car. The door was closed with her shoe on the step.” On cross-examination he again reiterated that the “conductor did not look before he closed the door” and that it was he alone and not the conductor who gave the motorman the signal for the emergency stop. He admitted that in 1949 one of the defendant’s street cars damaged the fender of his automobile to the extent of $17.51 and upon being interrogated “You don’t remember telling Mr. Harold Smith,[3] Claims Investigator of the New Orleans Public Service at the time that he refused your claim * * * T will get even with you one way or another’ ”, he responded “I don’t know what I said, but I know I didn’t say that.”
Counsel for defendant informed the court that it was his purpose in asking St. Ro-main the foregoing question to show the “animus” of the witness.
Defendant’s version of the manner in which the accident occurred emanated from Thomas Palmer, its conductor. In substance he testified that he had been employed by the defendant as a conductor for about one year before the accident and that he was fully cognizant of his employer’s instructions “not to close the door until everybody was in” and “not to start the car until the door was completely closed.” He explained the absence of the motorman as a witness for the defendant by asserting *599 that he was in the Armed Services stationed in Alaska. He related that he was alone on the platform when two men boarded the car at Hickory Street and Carrollton Avenue and paid their fare. He saw that the “door was clear” so he signalled the motorman to start and closed the door at the same time. He then more pertinently elucidated “I happened to look up to the door again and I saw a hand on the * * * center post and I immediately grabbed for the signal bell to stop the car and when I grabbed for the bell another hand[4] came on top of mine and we had come down with the bell together to stop the car;” that when he saw the hand in the door the car was just starting off and when it stopped in response to the emergency signal he opened the door, jumped out and helped the plaintiff into the car. He then returned to the situs of the accident, picked up her shoe and “laid it on the step.”
Dominick Barocco [5], one of the two passengers who boarded the street car at Hickory Street and Carrollton Avenue appeared as a witness on behalf of the defendant and related that as the car approached this stop, he and Counce were busy talking about who would pay the fare and he did not know, because of his preoccupation whether the plaintiff was also standing near them awaiting the arrival of the car. He entered the car after Counce, who paid their fare, and he did not notice if the plaintiff or anyone else was endeavoring to follow them into the car.
Mason Long, a passenger, who was seated in the left rear seat[6] of the car also appeared as a witness on behalf of defendant and laboriously vacillated in testifying that the plaintiff approached the car from its “back”, “she was running around the car”, “I don’t know where she was” and lastly “she was coming from the downtown side”, although he insisted, because of his position that he possessed an excellent view of the manner in which the accident occurred. In the final analysis, he related that two men boarded the car at this stop, paid their fares at which time the conductor simultaneously signalled the motorman to start the car and began closing the door, but it was opened “just about a foot * * * when Miss Hall grabbed the car * *
After the accident when the plaintiff had been removed from the neutral ground and was seated in the car, he noticed the absence of one of her shoes and called this to the attention of the conductor, who retrieved the missing shoe.
It is plaintiff’s contention that when she attempted to board the defendant’s street car it was stopped but that it started prematurely and the doors were simultaneously closed by its conductor upon her arm causing her to be dragged several feet and incur the injuries which resulted in this litigation.
Defendant, on the other hand, insists that the proximate cause of the accident was the gross negligence of the plaintiff in attempting to board defendant’s street car while it was in motion and the doors were in the process of being closed and, of course, in the alternative, the defendant asserted that the plaintiff was contributorily negligent.
The foregoing elucidation reveals that only questions of fact were posed for the trial court’s consideration. The judge thereof obviously accepted plaintiff’s version thereof as corroborated by her principal witness, St. Romain, and, therefore, concluded that the proximate cause of the *600 accident was the conductor’s negligence in not observing the instructions of his employer, that is “not to close the door until everybody was in” and “not to start the car until the door was completely closed” and that the plaintiff’s actions in no way contributed to her injuries.
The question which this appeal has posed for our consideration is whether that finding is so erroneous and unsupported by the evidence as to warrant a reversal by us.
We are of the opinion that no useful purpose would be served by again indulging in a discussion of the foregoing testimony or by endeavoring to reconcile the respective litigant’s versions of the manner in which the accident occurred. The trial judge accepted the plaintiff’s version thereof and our analysis of the record convinces us that the evidence preponderates in favor of the plaintiff and the judgment is, therefore, • correct.
The record reveals that the plaintiff, a woman fifty-eight years of age, incurred . the following injuries as a result of the accident :
General inflammation of the face and of the right lower extremity, with objective signs of swelling and discoloration; she had some traumatic arthritis, a bruised right knee; saphenous veins; thrombosis of the right lower extremity, contusions and abrasions of the right forearm, fight kneecap and a large amount of hemorrhage over the inner aspect of the right leg and a painful tailbone (coccydynia). She also had bursitis of the left upper extremity, but her attending physician, Dr. J. T. Nix, was unable to say. what relationship, if any, this condition had to the accident. The treatment administered consisted of applying a circular cast to the knee which remained on two to three weeks and heat treatments to the right lower extremity, She was treated for over, a year, however, most of the treatment occurred during the first six months after her -injury -and the last six months was largely devoted to observation of the patient. She was almost totally limited in her activity during the time the cast was on and when it was removed her disability gradually decreased within a period of two to three months to a partial disability. Dr. Nix expressed the opinon that the present condition of her leg is a permanent one.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.

. Dominick Barocco, whom she admitted knowing for about fourteen years but did not recognize at that time and Counce, who died prior to the trial hereof.

. Under cross-examination she stated she was from one to three feet removed from the men as they began to enter the car. However, when she arrived on the neutral ground she remained at one end of the concrete car stop strip while the two men were near the other end thereof.

.Harold Smith was placed on the witness stand by the defendant on December 13, 1955 and testified that St. Romain in December of 1949, through the medium of a telephone conversation had told him when payment of his claim was refused “I will get even with you so and so’s— if I don’t do it in one way X will do it in another.” Smith admitted that he had no witness to this telephone conversation but that he remembers St. Romain’s statement which was made about six years previously.

. The conductor endeavored to explain the presence of this hand that rang the emergency hell, since he had denied that anyone but him was present on the rear platform of the car, by asserting “I cannot say for sure, I was not looking in the front. Apparently the gentleman who had grabbed the bell was on his way out to get out at the next stop.”

. The other passenger died prior to the trial.

. Colloquially designated as the “beauty seat.”